IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 9, 2016


## MICHAEL KENT WALKER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Putnam County**
**No. 11-0765     Gary McKenzie, Judge**

_____

**No. M2015-00861-CCA-R3-PC – Filed April 12, 2016**

_____

The Petitioner, Michael Kent Walker, appeals the Putnam County Criminal Court's denial of his petition for post-conviction relief from his 2012 convictions for selling Schedule I and Schedule II controlled substances in a drug-free zone, for which he received an effective sentence of twelve years. The Petitioner contends that his guilty plea was unknowing and involuntary based upon erroneous advice from trial counsel regarding the amount of jail credit to which he was entitled. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Brandon S. Griffin, Sparta, Tennessee, for the appellant, Michael Kent Walker.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Bryant C. Dunaway, District Attorney General; and Beth Willis, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Background and Facts**

On January 10, 2012, the Petitioner pleaded guilty to violating his probation in case numbers 06-0064 and 06-0065. The Petitioner also entered guilty pleas, as a Range I standard offender, to sale of a Schedule II controlled substance in a drug-free zone and

sale of a Schedule I controlled substance in a drug-free zone in case number 11-0765. State v. Michael Kent Walker, No. M2012-01134-CCA-R3-CD, 2014 WL 3827815, at *1-2 (Tenn. Crim. App. Aug. 5, 2014). Under the terms of the Petitioner's negotiated plea agreement, the trial court would determine the length of the sentences on the drug convictions, but the sentences would run concurrently to each other and concurrently to the revoked sentences. Id. Following a sentencing hearing conducted March 29, 2012, the trial court sentenced the Petitioner to six years for sale of a Schedule II controlled substance and twelve years for sale of a Schedule I controlled substance, for a total effective sentence of twelve years.[1] This court affirmed the Petitioner's sentence on appeal. Id. at *4.

On June 24, 2013, while his direct appeal was pending, the Petitioner filed a timely, albeit premature, pro se petition for post-conviction relief, alleging that he received ineffective assistance of counsel and that his guilty plea was unknowing and involuntary. The Petitioner attached to his petition a document listing the charges pending against the Petitioner and stating that "I Am Pleading Guilty to the Following[.]" The document is signed by the Petitioner, trial counsel for the Petitioner, the assistant district attorney and the judge. At the bottom of the document appears the following with the underlined portion being information filled in the blanks by hand: "JAIL CREDIT: 240 days for following dates: 90 days prior, plus Aug 18 – Jan 10, 2011 – 2012[.]"

Following the appointment of counsel, no amended petition was filed. However, on March 17, 2015, the Petitioner filed a "Motion to Clarify Petitioner's Understanding of Time Credit Toward Current Sentence" (the Motion), in which the Petitioner asserted that he had understood his plea agreement to provide that he "was to get credit on time served for all cases." The Petitioner asserted that his understanding of "credit for time served" meant that he would receive jail credit on case number 11-0765 for any time served on 06-0064 and 06-0065[2] prior to his pleading guilty on January 10, 2012. The Motion states:

---

[1] The trial court entered corrected judgments on October 9, 2012, to reflect that the Petitioner's twelve-year sentence in case number 11-0765 was to run concurrently with case numbers 06-0064 and 06-0065. Corrected judgments were entered for a second time on February 8, 2013, with the added notation in the special conditions box, "This Judgment is corrected to reflect that the Defendant has addition[al] jail credit of 90 days[.]" The record on appeal does not contain the original judgments of conviction in case number 11-0765.

[2] The record is woefully lacking as it relates to the convictions in case numbers 06-0064 and 06-0065. The record does not contain judgments for these offenses, probation violation warrants, and/or probation revocation orders. From this court's opinion on direct appeal, we gather that the Petitioner received an effective four-year sentence in case numbers 06-0064 and 06-0065 based on the testimony of an officer with the Board of Probation and Parole that the Petitioner "was currently serving a four-year sentence, for which his probation had been revoked on January 10, 2012." Michael Kent Walker, 2014 WL 3827815, at *2.

- 2 -

Per correspondence from the State of Tennessee Department of Corrections [sic] dated October 8, 2012[,] one sentence for case number 06-0064 (count 13) expired June 20, 2009 and 06-0064 (count 17) expired June 20, 2011. Petitioner[']s complaint is that he does not appear to have any credit granted from 0[6]-0064 (count 13) when his understanding of his plea he is due 730 days credit. Per Petitioner[']s understanding of the deal as of June 20, 2011 he should have 1,460 days of credit on his sentence in case 11-0765[.]

The State filed a response to this motion, in which it observed:

The [corrected] judgment reflects jail credit from August 18, 2011, the [Petitioner's] arrest date on #11-0765 until March 29, 2012, the sentencing date.

The [Petitioner] is incorrect in alleging that he is entitled to jail credit from June 20, 2011[,] and all past jail days for service of previous violations of probation on #06-0064 & #06-0065 towards this sentence totaling 1,460 days credit. It is absurd to think the [Petitioner] would be entitled to jail credit from June 20, 2011 when he ha[d] yet to be arrested for #11-0765.

Any prior jail credit towards #06-0064 & [#]06-0065 should be documented in probation revocation orders specifically related to those case numbers.

At a hearing on the post-conviction petition, trial counsel testified that the Petitioner was charged with selling drugs in a drug-free zone, which would require that the Petitioner serve 100% of the minimum sentence in his range. In addition to drug charges, the Petitioner had six to eight felony forgery or worthless check charges, which the Petitioner understood could have been run consecutively if he was convicted of those charges. Trial counsel worked out a package plea deal, in which the State agreed to dismiss a forgery charge and the "bad check" charges as part of the agreement. According to trial counsel, the dismissed cases would have been difficult to defend. Trial counsel and the Petitioner thought this was a "good deal" and were "happy to get rid of those."

Trial counsel recalled that the Petitioner also had a violation of probation pending on two prior felony sentences and had been in jail a long time. As part of his plea agreement, the Petitioner wanted to ensure that he was "getting credit for time he had . . . served prior to [the day of the plea]." Trial counsel could not remember exact details, but

he knew that the Petitioner was owed some jail credit on the probation violations in case numbers 06-0064 and 06-0065. Both trial counsel and the Petitioner believed that one of the sentences had expired and the other was "about to expire" by the time they went to court for the plea.

Trial counsel stated that it was not until the Petitioner got to prison that the Petitioner learned that Sentence Management was not giving him credit for time that he had served in jail in Putnam County. Trial counsel testified that, at the time of the plea, he did not have access to information about what credits Sentence Management would give the Petitioner. The Petitioner contacted trial counsel and told counsel that he "was missing somewhere between six and nine months" of credit. Trial counsel tried to research the issue with the prior jail administrator, but counsel could never prove that the Petitioner was entitled to additional credit.

Counsel recalled that there was an error on the Petitioner's judgments that was discovered after the plea. However, the error had nothing to do with jail credits, and corrected judgments were entered. Trial counsel stated, "I think all of [the Petitioner's] problems happened after he got to prison, in terms of what Sentence Management, and how they were looking at his prior sentences, and what credits he had that were coming out of Putnam County." Trial counsel could not recall any discussion about the Petitioner getting credit on his expired sentence towards his new sentence as part of the plea.

On cross-examination, trial counsel agreed that, when the Petitioner's probation was revoked, the trial court would have entered a revocation order and that the Petitioner's jail credits should have been listed on the order. Trial counsel explained that he did not have access to Sentence Management so he always told his clients that he did not know when they would get out of prison. He identified the corrected judgments and explained that the judgments were corrected because they originally stated that the Petitioner's sentences ran consecutively. Trial counsel testified that the corrected judgments showed that the Petitioner's sentences were running concurrently with case numbers 06-0064 and 06-0065 and the judgments listed jail credit from August 18, 2011, to March 29, 2012. Trial counsel explained that the Petitioner was arrested on the drug charges in case number 11-0765 on August 18, 2011, and that the Petitioner received jail credit from that date to the date that he pled guilty. Trial counsel testified that the intent of the plea agreement was to give the Petitioner "as much [jail] credit as we could find." However, trial counsel never told the Petitioner that he would receive "prior credit"—or credit from time served before the date the Petitioner committed the drug offenses. Trial counsel never believed that the Petitioner was getting credit for time served prior to his arrest in case number 11-0765. He thought that there was some credit on the prior sentences that was never entered, but he stated that the credits on those sentences had "nothing to do with this plea."

- 4 -

Trial counsel testified that he went over the range of punishment for the Petitioner's charges. The Petitioner understood that the charges carried 100% service requirement because of the drug-free zone enhancement. Trial counsel told the Petitioner that his new sentences would run concurrently with his violation of probation. On the issue of jail credits, trial counsel told the Petitioner that it "went from the time he was in jail" on those charges, which would have been August 18, 2011. Trial counsel stated that the Petitioner's claim—that he was entitled to credit from June 20, 2011—did not make sense because the Petitioner had not yet been arrested on the drug charges on that date. Trial counsel explained, "[H]is problem is that his prior sentences weren't properly credited, not by this Court, or by the plea agreement, but when he got to prison. He's missing credit on his violation, that had nothing to do with this plea agreement." Trial counsel stated that he never told the Petitioner that he would be getting 1,460 days of credit towards his sentences in case number 11-0765.

On redirect examination, trial counsel recalled a "review hearing on this matter" on April 11, 2013. Trial counsel stated that he remembered going to court to correct the judgments a second time in order to give the Petitioner any credits he was due, but he stated that no specific dates were mentioned at the hearing. The prosecutor stated that he would "fix whatever we need to fix" and that he would search for any missing jail credits, and the parties agreed that they would present amended judgments following the hearing.

The Petitioner testified that he reached an agreement with the State to settle his charges in case number 11-0765. As part of the agreement, the sentence on the Petitioner's drug charges was to run concurrently with the violation of probation in case number 06-0064 and 06-0065. The Petitioner recalled that he asked trial counsel if he would "get jail credit on time," and trial counsel said, "Yes, [he] would." The Petitioner then asked trial counsel, "Will I also get credit for the counts that's already—the time that's already on the counts for the prior—the violation charge?" According to the Petitioner, trial counsel replied, "Yeah, we could do that." The Petitioner testified that he was entitled to "1,430-something days"[3] of jail credit and that was how much he believed he was getting when he entered his guilty plea. He stated that the jail credit was the basis of why he accepted the plea agreement.

On cross-examination, the Petitioner acknowledged that he signed the plea form but stated that he did not read the form. He noted that the plea form stated that he would receive jail credit of "240 days for the following days: 90 days prior, plus August 18th [2011] through January 10, [2012]." The Petitioner also acknowledged that his judgments give him that credit.

---

[3] In his pleadings, the Petitioner alleged that he was due 1,460 days of jail credit.

Regarding his criminal history, the Petitioner admitted that he had a criminal record dating back to 1992 and he had been through the criminal justice system "[m]any times." He acknowledged that he had previously pled guilty to both misdemeanors and felonies. He admitted that it would not make sense that he would get credit towards his drug charges for time served prior to his arrest on the charges. Nonetheless, the Petitioner stated that he was entitled to jail credit from June 2011 even though he was not arrested on the drug charges until August 2011.

Following the hearing, the post-conviction court denied relief. This timely appeal followed.

## II. Analysis

The Petitioner contends that the post-conviction court erred in denying his petition, asserting that his guilty plea was unknowing and involuntary due to trial counsel's alleged deficiencies. Specifically, the Petitioner contends that trial counsel erroneously advised him that he would receive pretrial jail credits in case number 11-0765 for time that he had served on his prior sentences in case numbers 06-0064 and 06-0065. The Petitioner asserts that, because the awarding such jail credits would have been illegal, his guilty plea was not knowingly and voluntarily made. The State responds that the Petitioner did not carry his burden of showing that he is entitled to post-conviction relief. We agree with the State.

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. Jaco v. State, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. Kendrick v. State, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. Id.; Fields, 40 S.W.3d at 456 (citing Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." Fields, 40 S.W.3d at 456 (citing Henley, 960 S.W.2d at 579); see also Kendrick, 454 S.W.3d at 457. The trial court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. Kendrick, 454 S.W.3d at 457.

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove two factors: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. Strickland, 466 U.S. at 687; Henley, 960 S.W.2d at 580; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. Finch v. State, 226 S.W.3d 307, 316 (Tenn. 2007) (citing Carpenter v. State, 126 S.W.3d 879, 886 (Tenn. 2004)).

As to the first prong of the Strickland analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." Henley, 960 S.W.2d at 579 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)); see also Goad, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688); see also Baxter, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. Goad, 938 S.W.2d at 370. Therefore, under the second prong of the Strickland analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694) (internal quotation marks omitted). With respect to a post-conviction challenge to a guilty plea, if the petitioner shows that counsel's representation was deficient, he must show prejudice by demonstrating that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Counsel's effectiveness may also implicate the requirement that a plea must be entered knowingly and voluntarily, i.e., that the petitioner made the choice to plead guilty after being made aware of the significant consequences of such a plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). When reviewing a guilty plea, this court looks to both the federal standard as announced in the landmark case Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard as announced in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by Tenn. R. Crim. P. 37(b) and Tenn. R. App.

P. 3(b). Don Allen Rodgers v. State, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764, at *5 (Tenn. Crim. App. Apr. 26, 2012). Under the federal standard, there must be an affirmative showing that the plea was "intelligent and voluntary." Boykin, 395 U.S. at 242. Likewise, the Tennessee Supreme Court has held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e. that he has been made aware of the significant consequences of such a plea . . . ." Mackey, 553 S.W.2d at 340. "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . ." Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43).

In order to determine whether a plea is intelligent and voluntary, the trial court must "canvass[] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Boykin, 395 U.S. at 244. The trial court looks to several factors before accepting a plea, including:

> [T]he relative intelligence of the defendant; degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship, 858 S.W.2d at 904; Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006). Once the trial court has conducted a proper plea colloquy, it discharges its duty to assess the voluntary and intelligent nature of the plea and creates an adequate record for any subsequent review. Boykin, 395 U.S. at 244.

When addressing the issue of the Petitioner's jail credits, the post-conviction court found, as follows:

> So I think the record is pretty clear. I find, the Court has listened to the proof in this, and finds . . . [trial counsel] to be credible. [Trial counsel] has testified that he explained to the [Petitioner] what credit he would receive on the judgment. He went back, there was even a corrected judgment that reflects the amount of time that the [Petitioner] was to receive credit for.
>
> The State has introduced Exhibit No. 7, which is the plea agreement, where the [Petitioner] has signed it, and in this signed plea agreement, it

states what the jail credit will be. So, the Court is having a hard time understanding how the [Petitioner's] plea was not entered knowing or voluntary on the day that he entered it, from the testimony of [trial counsel], it is in direct conflict of what the [Petitioner] is saying, and I find the [Petitioner's] testimony not to be credible. It's hard for me to believe that the only individual who doesn't understand what's going on is the [Petitioner] himself, when the [Petitioner] himself has signed the form that sets out everything that [trial counsel] is saying.

The Court would have to find today, to find for the [Petitioner], that the [Petitioner's] word today trumps forms, trumps transcripts, and the testimony of an attorney that's practiced, well established in this community for some time, and finds to be, and the Court finds to be credible. I'm not willing to do that today.

So, the Court is going to overrule the post-conviction [petition]. As to the amount of time he gets on those violations, that's not in front of me. I don't know what that is. But as to this case that we have here today, it is impossible, by operation of law, for the [Petitioner] to get credit on a sentence for days that occurred before he ever committed the crime. And I have a hard time believing that [trial counsel] would have told him such.

In this case, the Petitioner contends that trial counsel erroneously advised him that he would receive pretrial jail credits in case number 11-0765 for time that he had served on his prior sentences in case numbers 06-0064 and 06-0065. The Petitioner correctly notes that the awarding of such pretrial jail credits would have been improper. See State v. Henry, 946 S.W.2d 833, 834-35 (Tenn. Crim. App. 1997) (stating that if the defendant "were incarcerated on the first offense and later separately charged for the second offense, then he can receive pretrial jail credit on the second offense only from the time of that charge"); Trigg v. State, 523 S.W.2d 375, 375 (Tenn. Crim. App. 1975) (providing that, pursuant to Tenn. Code Ann. § 40-23-101(c), "[i]t is only when the time spent in jail or prison is due to or, as the statute says, 'arises out of' the offense for which the sentence against which the credit is claimed that such allowance becomes a matter of right"); Monolito B. Cooper v. State, No. E2008-00718-CCA-R3-HC, 2009 WL 4823851, at *2 (Tenn. Crim. App. Dec. 15, 2009) (stating that "[t]here is no state law provision allowing credit for time served before the crime was committed").

However, the post-conviction court did not find the Petitioner's testimony credible and, instead, accredited the testimony of trial counsel. Trial counsel testified that the Petitioner was arrested on the drug charges in case number 11-0765 on August 18, 2011, and that the Petitioner received jail credit from that date to the date that he pled guilty.

- 9 -

Trial counsel stated that he never advised the Petitioner that he would receive jail credits on the new case for time he had already served on prior sentences. Trial counsel stated that the Petitioner's claim—that he was entitled to credit from June 20, 2011—did not make sense because the Petitioner had not yet been arrested on the drug charges on that date. Trial counsel also explained that the "problem" was that jail credits on the Petitioner's prior sentences "weren't properly credited," but he plainly stated that the issue "had nothing to do with this plea agreement."

The Petitioner acknowledges the trial court's adverse credibility determination but asserts that evidence in the record supports his claim regarding jail credits. The Petitioner argues that his plea form shows that he was entitled to credit of an additional 90 days. However, it is not at all clear what the notation "90 days prior" on the plea form means, especially when the Petitioner pled guilty to violating his probation on his prior charges at the same time that he pled guilty to the new charges. The Petitioner also relies on the review of his jail credits apparently conducted by the trial court on April 11, 2013. While the record does not contain a transcript of this hearing, trial counsel testified that he remembered going to court to correct the judgments a second time in order to give the Petitioner any credits he was due, but he stated that no specific dates were mentioned at the hearing. Additionally, the prosecutor stated that he would "fix whatever we need to fix" and that he would search for any missing jail credits. We agree with the State that a fair reading of trial counsel's testimony reflects that the review hearing was an attempt to address the credits missing on the Petitioner's prior sentences following the probation revocation.

The record does not preponderate against the post-conviction court's findings. There is no credible evidence in the record that trial counsel misrepresented to the Petitioner the amount of jail credit he would receive on his sentence in case number 11-0765. Because the Petitioner failed to prove his claim by clear and convincing evidence, we conclude that the trial court properly denied post-conviction relief.

### III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the judgment of the post-conviction court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE